USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 4/21/2025

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------------- X
:
PHILADELPHIA INDEMNITY INSURANCE :
COMPANY, :
: 1:23-cv-4101-GHW
Plaintiff, :
: ORDER
-v - :
:
SOUTH BRONX OVERALL ECONOMIC :
DEVELOPMENT CORPORATION *d/b/a* :
SOBRO, *et al.*, :
:
Defendants. :
:
----------------------------------------------------------------- X

GREGORY H. WOODS, United States District Judge:

Plaintiff Philadelphia Indemnity Insurance Company ("Philadelphia") insured two Bronx-based organizations in 2013. That year, while working on a construction project, Ebrima Jallow fell down a flight of stairs in a building owned and managed by those insured organizations. Mr. Jallow's estate and wife brought a wrongful death action in New York State Supreme Court. The insured organizations failed to appear and defend themselves in state court. Consequently, a $16 million default judgment was entered against them.

Ten years after the accident, in March 2023, Philadelphia learned about the wrongful death suit for the first time. Facing the $16 million default judgment against its insureds, Philadelphia filed this declaratory judgment action seeking a determination that it is not responsible for the judgment because it received late notice. In May 2024, however, the state trial court vacated the very default judgment at issue in this case. That vacatur is now pending on appeal, and Philadelphia seeks a stay of this action. Because the outcome of the pending appeal will dramatically change the focus of this declaratory judgment action, Philadelphia's motion for a stay of this action is granted.

I.     **Background**

    a. **The Underlying Wrongful Death Lawsuit**

In 2013, Ebrima Jallow was doing construction work in a building owned and managed by Defendants BUFNY II Associates, L.P. ("BUFNY") and South Bronx Overall Economic Development Corporation ("SoBro") respectively. *See* Dkt. No. 1 (complaint); Dkt. No. 61-1 (the "Kohane Decl.") ¶ 13. Mr. Jallow fell down a flight of stairs while on the job and died. Kohane Decl. ¶¶ 12–13. At the time, Philadelphia insured SoBro and BUFNY. *See id.* ¶ 4; Compl. ¶¶ 18–19.

In 2014, Mr. Jallow's estate and his wife, Salimata Bokum, brought a wrongful death action against SoBro and BUFNY. *Id.* ¶¶ 4, 13–14; Compl. ¶ 13. They filed suit in the New York State Supreme Court, Bronx County. Kohane Decl. ¶ 12. SoBro and BUFNY did not appear and, in 2015, the court entered an order of default. *Id.* ¶ 4.

The New York State Supreme Court did not determine damages until March 2023. *Id.* ¶ 16. The court conducted a hearing. SoBro and BUFNY still failed to appear. On March 10, 2023, the court entered a $16 million judgment against SoBro and BUFNY. Kohane Decl. ¶ 15–16; *id.* Exhibit C (the judgment). Philadelphia asserts that it learned about the wrongful death suit for the first time six days later, on March 16, 2023. Kohane Decl. ¶¶ 5, 17. Philadelphia thereafter denied coverage because of the asserted late notice. *Id.* ¶ 18.

    b. **Procedural History**

On May 17, 2023, Philadelphia filed this declaratory judgment action. *See* Compl. Philadelphia sued all parties in the wrongful death case: (1) the co-administrators of Mr. Jallow's estate— Salimata Bokum, Almamy Jammeh and Lamine Kone—and his wife Salimata Bokum (collectively, the "Jallow Defendants"), and (2) SoBro and BUFNY (the "Insured-Defendants" or, collectively with the Jallow Defendants, the "Defendants"). Philadelphia seeks a determination that it is not responsible for the default judgment because the late notice prejudiced it. Philadelphia

contends that "the default judgment entered against [its] insureds entitled [it] to an irrebuttable presumption that its right to defend the underlying action was prejudiced." Dkt. No. 62 ("Mem."); Kohane Decl. ¶ 6.

A year after filing this action, in May 2024, the New York State Supreme Court vacated the default judgment. Kohane Decl. ¶ 7; Kohane Decl. Exhibit D (the "Vacatur Order"). The Vacatur Order also denied a motion by BUFNY to dismiss the wrongful death action for lack of personal jurisdiction. Kohane Decl. ¶ 20; Vacatur Order at ECF page 13. The plaintiffs in the wrongful death action appealed the Vacatur Order to the New York State Appellate Division, First Department. Kohane Decl. ¶ 8. BUFNY cross-appealed the denial of its motion to dismiss for lack of personal jurisdiction. *See* Kohane Decl. ¶ 31; *id.* Exhibit F.[1] Both appeals are pending. *See* Kohane Decl. ¶ 21.

Philadelphia now moves for a stay of this action or, in the alternative, to dismiss this action without prejudice pursuant to Federal Rule of Civil Procedure 41(a)(2). Dkt. No. 61 (notice of motion); *see* Mem.; Kohane Decl. It does so for two reasons. First, if the First Department reverses the denial of the motion to dismiss for lack of personal jurisdiction and dismisses the underlying action altogether, then the declaratory judgment action before this court may become moot. *See* Mem. at 4. Second, Philadelphia contends that it is entitled to an irrebuttable presumption of prejudice if the default judgment occurred before Philadelphia received notice of the wrongful death lawsuit. Consequently, Philadelphia argues that whether the default judgment is reinstated or not affects the legal presumptions that this Court will apply to this declaratory judgment action.[2]

---

[1] The Kohane declaration asserts that both "SoBro and BUFNY have cross-appealed insofar as the motion court denied their motion to dismiss based on lack of personal jurisdiction." Kohane Decl. ¶ 31. The underlying exhibits indicate that only BUFNY contested personal jurisdiction in the New York State Supreme Court, and therefore only BUFNY appeals the denial of its motion to dismiss on those grounds. *See* Kohane Decl. Exhibit F (notice of appeal filed by BUFNY); Vacatur Order at ECF page 13 ("That part of Defendant BUFNY II's motion seeking dismissal of the Complaint, for lack of personal jurisdiction, or otherwise, is denied.").

[2] In particular, Philadelphia contends that it may only deny coverage under New York law "on the basis of late notice if it was prejudiced by such late notice." Kohane Decl. ¶ 30. According to Philadelphia, "[t]he default judgment entered

3

Alternatively, Philadelphia seeks leave to file a motion for summary judgment, although it maintains that the issue is not yet ripe for briefing. Dkt. No. 67.

Defendants oppose Philadelphia's motion for a stay or dismissal of this action in its entirety. Dkt. No. 65 ("Jallow Opp."); Dkt. No. 64 (Jallow's supporting declaration); Dkt. No. 66 ("SoBro Opp"). The Defendants do not disagree with the premise of Philadelphia's legal argument, namely, that Philadelphia is entitled to an irrebuttable presumption of prejudice if the default judgment occurred before Philadelphia received notice. Rather, the Jallow Defendants contend that Philadelphia was not prejudiced because it "received timely notice." *See* Jallow Opp. at 2–3. The Insured-Defendants also argue that "staying or dismissing the case will only result in delay and further expense." *See* SoBro Opp. at 2. The Insured-Defendants assert that the timing of the motion is "troublesome" because the Vacatur Order took effect in May 2024 but Philadelphia waited until now to request the stay or dismissal. *Id.* at 2–3.

Philadelphia replied on March 31, 2025, reiterating its earlier arguments. Dkt. Nos. 69, 70 ("Reply"). Philadelphia asserts that it waited to request a stay because the parties were engaged in mediation, and "it remained hopeful that the case could be resolved through global mediation." Reply at 3. With mediation unsuccessful and discovery complete, Philadelphia now seeks the stay "to save its adversaries, and the Court, from wasting their time in briefing cross-summary judgment motions before all key facts have been elucidated . . . ." Reply at 5. On April 3, 2025, Philadelphia informed the Court by letter that the First Department had scheduled oral argument for April 24, 2025. Dkt. No. 72. Philadelphia expects a ruling in May 2025. *Id.*

---

against Philadelphia's insureds entitled Philadelphia to an irrebuttable presumption that its right to defend the underlying action was prejudiced," and therefore it can deny coverage. Mem. at 2. However, if the vacatur of the default judgment is upheld, and "the insured's liability was not previously determined," then the posture and strategy of the case change because the presumptions shift: if liability was not determined prior to Philadelphia receiving notice, then "the insured must establish that the insurer was not prejudiced [if] notice was provided to [Philadelphia] more than two years late" under the relevant insurance policy. *See* Mem. at 3.

4

## II. Legal Standard

### a. The Power to Stay Proceedings

"[T]he power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants." *Louis Vuitton Malletier S.A. v. LY USA, Inc.*, 676 F.3d 83, 96 (2d Cir. 2012). "[T]he decision whether to issue a stay is [therefore] 'firmly within a district court's discretion.'" *Delgado v. NJ Transit Rail Operations, Inc.*, 329 F.R.D. 506, 507 (S.D.N.Y. 2019) (alterations in original).

> Generally, in deciding whether to stay proceedings, courts in the Second Circuit examine the following five factors: (1) the private interests of the plaintiffs in proceeding expeditiously with the civil litigation as balanced against the prejudice to the plaintiffs if delayed; (2) the private interests of and burden on the defendants; (3) the interests of the courts; (4) the interests of persons not parties to the civil litigation; and (5) the public interest.

*Delgado*, 329 F.R.D. at 508 (citing *Catskill Mountains Chapter of Trout Unlimited, Inc. v. U.S. E.P.A.*, 630 F. Supp. 2d 295, 304 (S.D.N.Y. 2009) (collecting cases)). "In analyzing these factors on a case-by-case basis, 'the basic goal is to avoid prejudice.'" *Delgado*, 329 F.R.D. at 508.

### b. Voluntary Dismissal Under Federal Rule of Civil Procedure 41(a)(2)

Federal Rule of Civil Procedure 41(a)(2) provides that, absent agreement between the parties, "an action may be dismissed at the plaintiff's request only by court order, on terms that the court considers proper." Fed. R. Civ. P. 41(a)(2). "The grant or denial of a dismissal on motion under Rule 41(a)(2) is within the sound discretion of the trial court." *Bynum v. Maplebear Inc.*, 209 F. Supp. 3d 528, 535 (E.D.N.Y. 2016) (quotations omitted). Unless the order states otherwise, a dismissal under Rule 41(a)(2) is without prejudice. *Id.* "Voluntary dismissal without prejudice is not a matter of right." *Baby-Cakes Studio LLC v. Robinson*, 2021 WL 3604579, at *2 (S.D.N.Y. Aug. 12, 2021). Rather, "[a] voluntary dismissal without prejudice under Rule 41(a)(2) will be allowed 'if the defendant will not be prejudiced thereby.'" *D'Alto v. Dahon California, Inc.*, 100 F.3d 281, 283 (2d Cir.

5

1996) (quoting *Wakefield v. Northern Telecom Inc.*, 769 F.2d 109, 114 (2d Cir. 1985)).

"Two lines of authority have developed with respect to the circumstances under which a dismissal without prejudice might be improper." *Camilli v. Grimes*, 436 F.3d 120, 123 (2d Cir. 2006). "One line indicates that such a dismissal would be improper if 'the defendant would suffer some plain legal prejudice other than the mere prospect of a second lawsuit.'" *Id.* (quoting *Cone v. West Virginia Pulp & Paper Co.*, 330 U.S. 212, 217 (1947)); *Kwan v. Schlein*, 634 F.3d 224, 230 (2d Cir. 2011) (same). "Another line indicates that the test for dismissal without prejudice involves consideration of various factors, known as the *Zagano* factors." *Camilli*, 436 F.3d at 123. Those factors include "(1) the plaintiff's diligence in bringing the motion, (2) any undue vexatiousness on the plaintiff's part, (3) the extent to which the suit has progressed, including the defendant's efforts and expense in preparation for trial, (4) the duplicative expense of relitigation, and (5) the adequacy of the plaintiff's explanation for the need to dismiss." *Id.*; *Kwan*, 634 F.3d at 230 (same).

"Courts applying the *Zagano* factors frequently place the greatest emphasis on the efforts expended by the defendant in discovery and trial preparation and the corresponding prejudice the defendant would suffer if forced to relitigate." *Baldanzi v. WFC Holdings Corp.*, 2010 WL 125999, at *4 (S.D.N.Y. Jan. 13, 2010); *see also Baby-Cakes Studio*, 2021 WL 3604579, at *4 (same). "This factor is emphasized because it is often a strong indicator of whether the case has reached a prejudicial point—the key inquiry in evaluating a motion to dismiss without prejudice." *Baby-Cakes Studio*, 2021 WL 3604579, at *4; *see also*, *SEC v. Compania Internacional Financiera S.A.*, 2012 WL 1856491, at *2 (S.D.N.Y. May 22, 2012) ("The most important inquiry remains whether the defendant will suffer substantial prejudice as a result of a dismissal without prejudice.").

### III.  Discussion

Because the issues pending appeal in the wrongful death action are central to the declaratory judgment action before this court, the Court exercises its discretion to stay this proceeding in the

6

interest of "economy of time and effort for itself, for counsel, and for litigants." *See Louis Vuitton Malletier S.A.*, 676 F.3d at 96. First, there is no question that "the private interests of the plaintiff[] in proceeding expeditiously with the civil litigation as balanced against the prejudice to the plaintiff[] if delayed" weighs in favor of a stay. *See Catskill Mountains Chapter of Trout Unlimited, Inc.*, 630 F. Supp. 2d at 304. Indeed, Philadelphia—the plaintiff in this action—is the party seeking a stay.

Second, "the private interests of and burden on the defendants" weighs slightly in favor of a stay. *Id.* On the one hand, the Jallow Defendants understandably oppose a stay because discovery is complete, and summary judgment motion practice may move the case forward with respect to the issue of timely notice. Jallow Opp. at 2–3. On the other hand, the Court cannot assume that the Jallow Defendants will prevail on their argument that Philadelphia had timely notice. If Philadelphia did not, in fact, receive notice prior to the default judgment, then the Court and the parties will inevitably have to reach the issue of prejudice. *See generally Travelers Indem. Co. v. Patino*, 2022 WL 3701506, at *2 (S.D.N.Y. Aug. 26, 2022) ("[A]n irrebuttable presumption of prejudice shall apply if, prior to notice, the insured's liability has been determined by a court of competent jurisdiction . . . .") (citing N.Y. Ins. Law § 3420(c)(2)(B)). Additionally, the Insured-Defendants' primary concern is that a stay will "result in delay and further expense." *See* SoBro Opp. If the Court entertains summary judgment motions now only for the First Department to reinstate the default judgment, then the parties will need to redo the entire summary judgment endeavor. Surely one round of motion practice is less costly for all than two rounds. As Philadelphia aptly put it, a stay avoids all parties "wasting their time in briefing cross-summary judgment motions before all key facts have been elucidated . . . ." Reply at 3.

For the same reasons, the Court finds that "staying this action is in the best interest of the courts, non-parties, and the public because it promotes the efficient use of judicial resources and

7

'minimiz[es] the possibility of conflicts between different courts.'" *City of Amsterdam v. Purdue Pharma L.P.*, 2019 WL 5102564, at *3 (N.D.N.Y. Oct. 11, 2019) (citing *N.Y. Power Auth. v. United States*, 42 Fed. Cl. 795, 799 (Fed. Cir. 1999)). Indeed, one issue pending appeal before the First Department is whether the New York State Supreme Court had personal jurisdiction over the underlying defendants. As Philadelphia points out, if the First Department reverses the Vacatur Order and "dismisses the underlying action altogether—then the declaratory judgment action before this court becomes moot." *See* Mem. at 4. Litigating a case that may become moot is inefficient.

In light of the Court's decision to stay this action, the Court reserves ruling on Philadelphia's motion to dismiss this case pursuant to Federal Rule of Civil Procedure 41(a)(2). One principal consideration in deciding that motion is prejudice to the defendants. *See Baby-Cakes Studio*, 2021 WL 3604579, at *4 ("[W]hether the case has reached a prejudicial point [is] the key inquiry in evaluating a motion to dismiss without prejudice."); *see also Compania Internacional Financiera S.A.*, 2012 WL 1856491, at *2 ("The most important inquiry remains whether the defendant will suffer substantial prejudice as a result of a dismissal without prejudice."). The Court cannot evaluate prejudice until the First Department has ruled on the issues pending appeal. If the First Department dismisses the underlying action, for example, this entire action may become moot. And if the First Department upholds the vacatur of the default judgment, it may be that Defendants will not suffer substantial prejudice as a result of the dismissal of this action because its original premise will have been uprooted.

This Court will therefore take up Philadelphia's motion to dismiss the case pursuant to Federal Rule of Civil Procedure 41(a)(2) after the First Department issues a decision. In the interim, however, the Court exercises its discretion to stay this proceeding.

**IV.    Conclusion**

Philadelphia's motion for a stay of this action or, in the alternative, to dismiss this action

8

without prejudice pursuant to Federal Rule of Civil Procedure 41(a)(2) is GRANTED IN PART. Philadelphia's motion for a stay of this action is GRANTED. After final resolution of the issues currently on appeal to the First Department, the Court will take up Philadelphia's motion to dismiss this action without prejudice pursuant to Federal Rule of Civil Procedure 41(a)(2). The parties are directed to notify this Court by letter after the First Department rules on the appeal of the default judgment vacatur and the denial of BUFNY's motion to dismiss for lack of personal jurisdiction.

      The Clerk of Court is directed to indicate a stay on the docket, and to terminate the motions pending at Dkt. Nos. 61, 67, and 72.

      SO ORDERED.

Dated: April 21, 2025
      New York, New York

_____
GREGORY H. WOODS
United States District Judge